THE STATE EX REL. FURNAS ET AL. *v.* MONNIN, JUDGE.

[Cite as *State ex rel. Furnas v. Monnin,*
120 Ohio St.3d 279, 2008-Ohio-5569.]

(No. 2008–1598—Submitted October 24, 2008—Decided October 30, 2008.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of prohibition to prevent a juvenile court judge from proceeding in a parentage action and to direct him to dismiss the case and vacate all orders contained therein. We deny the writ because even after a final decree of adoption is entered, a juvenile court judge does not patently and unambiguously lack jurisdiction to determine paternity solely for the limited purpose of allowing the putative father to exercise his statutory rights under R.C. 3107.09 and 3107.091 if he is determined to be the biological father. Those statutes allow a biological father to provide information regarding his social and medical history for placement in the child's adoption records.

### Petition to Adopt Child Filed in Probate Court

{¶ 2} On July 14, 2007, Tracy Kay Rapp gave birth to a child in Springfield, Ohio. On August 7, 2007, Tracy Rapp appeared before the Clark County Court of Common Pleas, Probate Division, pursuant to R.C. 5103.16(D) and requested that the child be placed for adoption with relators, Kevin Jay Furnas and Terrie Jean Furnas. On that same date, relators filed a petition in the probate court to adopt the child. In their petition, relators specified that the consent of any putative father was not required because no person had timely registered on the Putative Father Registry under R.C. 3107.062.

### Juvenile Court Parentage Case and Stay of Probate Court Adoption Case

{¶ 3} On November 13, 2007, the Clark County Department of Job and Family Services, CSEA Division ("the department") filed a complaint to determine

parentage in the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, alleging that Sonny J. Frederick is the father of the child and requesting that the juvenile court order that Tracy Rapp, Sonny Frederick, and the child submit to genetic testing. According to a subsequent filing by the department in the paternity case, Frederick had twice refused to consent to the adoption and had contacted the department in August 2007, after he had experienced difficulty in attempting to determine whether he was the child's biological father.

{¶ 4} In November 2007, the department filed an objection in the probate court adoption case and sought a stay of that case until the juvenile court determined the biological father of the child, and the probate court stayed the adoption proceeding. The department then added relators as parties to the paternity case.

{¶ 5} In December 2007, relators filed in the probate court a motion to remove the stay, to strike the department's objection, and to enter a judgment finding that the consent of the putative father is not required in the adoption case. Relators also filed a motion to dismiss the parentage action in juvenile court. Relators argued that because the probate court had first invoked its jurisdiction to decide all legal rights regarding the child, the juvenile court lacked any jurisdiction in the paternity case.

### Probate Court Adoption Decree

{¶ 6} The probate court granted relators' motion and removed the stay. On February 11, 2008, the probate court issued a final decree of adoption, which granted relators' petition for adoption and changed the name of the minor child to Morgan Jay Furnas. The decree was not appealed. Later that same month, respondent, Clark County Juvenile Court Judge Joseph N. Monnin, denied relators' motion to dismiss the paternity action after relators' counsel failed to appear for a hearing. A notice of adoption was subsequently filed with the juvenile court.

### Contempt of Court

{¶ 7} Thereafter, the department filed a motion in the juvenile court to find relators in contempt of court for failure to present the child for genetic testing. Relators filed a second motion to dismiss the paternity case. On July 17, 2008, Judge Monnin found relators in contempt of the court's March 18, 2008 order for genetic testing and ordered that relators pay a $250 fine and present the child for genetic testing on August 6, 2008. Both Rapp and Frederick had already submitted to genetic testing. On July 23, relators appealed the order and filed a motion for stay. On August 1, the court of appeals granted a temporary stay to allow relators to go on a previously planned vacation during the time of the ordered genetic testing, but ordered relators to "cooperate expeditiously with

counsel for [the department] to arrive at an appropriate date for re-scheduling genetic testing of the minor child."

## Expedited Adoption/Termination of Parental Rights Case under S.Ct.Prac.R. X(10)

{¶ 8} On August 13, 2008, relators filed this action for a writ of prohibition to prevent Judge Monnin from proceeding with the juvenile court case and to direct him to dismiss the case and to vacate all orders entered in the case. After Judge Monnin filed an answer and motion for judgment on the pleadings and relators filed a memorandum in opposition, we granted an alternative writ. 119 Ohio St.3d 1435, 2008-Ohio-4490, 893 N.E.2d 508. The parties have submitted evidence and briefs, and the cause is now before us for our consideration of the merits.

## Prohibition

{¶ 9} Relators claim entitlement to a writ of prohibition to prevent Judge Monnin from proceeding in the parentage action and to order him to dismiss the case and to vacate all orders entered in the case.

{¶ 10} To be entitled to the requested writ of prohibition, relators have to establish that (1) Judge Monnin is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Sliwinski v. Burnham Unruh*, 118 Ohio St.3d 76, 2008-Ohio-1734, 886 N.E.2d 201, ¶ 7. Judge Monnin has exercised judicial authority in the parentage case.

{¶ 11} For the remaining requirements, "[i]f a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 12; *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 18. "Where jurisdiction is patently and unambiguously lacking, relators need not establish the lack of an adequate remedy at law because the availability of alternate remedies like appeal would be immaterial." *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15.

{¶ 12} Conversely, "[i]n the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal." *State ex rel. Plant v. Cosgrove*, 119 Ohio St.3d 264, 2008-Ohio-3838, 893 N.E.2d 485, ¶ 5.

{¶ 13} The dispositive issue is thus whether Judge Monnin and the juvenile court patently and unambiguously lack jurisdiction over the parentage action when the probate court has issued a final adoption decree.

### No Patent and Unambiguous Lack of Jurisdiction

{¶ 14} Judge Monnin and the juvenile court have basic statutory jurisdiction over paternity actions instituted by a putative father. See R.C. 2151.23(B) ("the juvenile court has original jurisdiction under the Revised Code * * * [t]o determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.18 of the Revised Code"); R.C. 3111.06 ("an action authorized under sections 3111.01 to 3111.18 of the Revised Code may be brought in the juvenile court"); R.C. 3111.04(A) ("An action to determine the existence or nonexistence of the father and child relationship may be brought by * * * a man alleged or alleging himself to be the child's father").

{¶ 15} Relators assert that notwithstanding this basic statutory jurisdiction, R.C. 3107.15(A)(1) patently and unambiguously divests Judge Monnin and the juvenile court of jurisdiction to proceed in the parentage action because of the probate court's adoption decree. Under the statute, a final decree of adoption acts "to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes."

{¶ 16} "R.C. 3107.15(A) provides that a final decree of adoption issued by an Ohio court has the effect of terminating all parental rights of biological parents and creating parental rights in adoptive parents." *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 145, 684 N.E.2d 1228. In *Kaylor,* we reversed a judgment of a court of appeals and granted a writ of prohibition to prevent a judge and court from proceeding on a motion for visitation filed by a biological parent whose rights had been terminated by a final decree of adoption. We held that notwithstanding the court and judge's basic statutory jurisdiction to grant visitation in a domestic-relations proceeding, "R.C. 3107.15(A)(1) patently and unambiguously divested them of jurisdiction to proceed on the biological mother's motions relating to visitation following the adoption decree terminating the natural mother's parental rights." Id. at 146, 684 N.E.2d 1228.

{¶ 17} But R.C. 3107.15(A)(1) does not purport to terminate a man's right to establish that he is the biological father of a child who has been adopted. And Judge Monnin does not suggest that he will exercise jurisdiction to determine the parental rights of biological parents of children who have been adopted. Thus, *Kaylor* is distinguishable from this case.

{¶ 18} In this regard, relators argue that "[a]ny possible rights of Sonny J. Frederick relating to this child have been terminated." But as Judge Monnin observes, biological parents have a right to request forms to provide their social and medical history even *after* an adoption decree has been finalized.

{¶ 19} "The department of job and family services shall prescribe and supply forms for the taking of social and medical histories of the biological parents of a minor available for adoption." R.C. 3107.09. " '[B]iological parent' means a biological parent whose offspring, as a minor, was adopted and with respect to whom a medical and social history was not prepared prior or subsequent to the adoption." R.C. 3107.091(A). A social history describes and identifies "the age; ethnic, racial, religious, marital, and physical characteristics; and educational, cultural, talent and hobby, and work experience background of the biological parents of the minor." R.C. 3107.09(C). A medical history identifies "major diseases, malformations, allergies, ear or eye defects, major conditions, and major health problems of the biological parents that are or may be congenital or familial." Id.

{¶ 20} A biological parent has the right to cause these histories "to be corrected or expanded at any time prior to or *subsequent to the adoption of the minor*," and that right is not lost "even if the biological parent did not provide any information to the assessor at the time the histories were prepared." (Emphasis added.) R.C. 3107.09(D). Completed forms are filed in the records of the adoption case. R.C. 3107.091(B).

{¶ 21} Nor is this a meaningless right. Social and medical histories of biological parents contain "critical information" that may help adopted children "receive appropriate diagnostic and treatment services for physical, emotional and genetic disorders" and give the children "the necessary health and background information that may be important to them throughout their lives." Ohio Adm.Code 5101:2–48–03(A)(1) and (4).

{¶ 22} Notably, although Judge Monnin cited R.C. 3107.091 in his brief, relators did not offer an argument specifying why it is inapplicable to Frederick, the putative father, here.

{¶ 23} Therefore, a final decree of adoption does not patently and unambiguously divest a juvenile court of jurisdiction to determine paternity solely for the limited purpose of allowing the putative father to establish that he is the biological father so that he can exercise his statutory rights under R.C. 3107.09 and 3107.091 to provide information regarding his social and medical history for placement in the child's adoption records. Judge Monnin thus has the requisite jurisdiction to make that determination.

## Conclusion

{¶ 24} Based on the foregoing, relators have not established their entitlement to the requested extraordinary relief in prohibition. Thus, we deny the writ.

Writ denied.

Moyer, C.J., and Pfeifer, Lundberg Stratton, and O'Connor, JJ., concur.

Cupp, J., concurs separately.

O'Donnell and Lanzinger, JJ., dissent.

---

**Cupp, J., concurring.**

{¶ 25} I agree with the majority that the writ of prohibition should be denied. The trial judge did not patently and unambiguously lack jurisdiction under R.C. 3107.09 and 3107.091. In my view, this is because there *may* be grounds under these statutes for the juvenile court to determine the biological parent for the limited purpose of submitting information for the adoption file.

{¶ 26} At this juncture, however, I would not decide matters that are beyond the issue of patent and unambiguous lack of jurisdiction. Because this court need determine only whether the respondent judge and court patently and unambiguously lack jurisdiction to proceed, this court is under no obligation to express an opinion on the merits of the underlying jurisdictional claim. See *State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, 884 N.E.2d 42, ¶ 14. In this regard, I would leave the matter of whether the juvenile court does, in fact, have jurisdiction to determine paternity for the purposes of R.C. 3107.09 and 3107.091 for the court of appeals to address in the first instance after full briefing and oral argument by the parties in that court. This court can then take up the matter, if warranted, in the normal course after the decision of the court of appeals.

{¶ 27} Accordingly, because I believe the majority opinion goes further than necessary and decides issues that have not had the benefit of the full process of our court system, I concur only to the extent expressed herein.

---

**O'Donnell, J., dissenting.**

{¶ 28} I respectfully dissent.

{¶ 29} In my view, a person's opportunity to provide medical and social information pursuant to R.C. 3107.09(D) and 3107.091 depends on whether the person is a biological parent of the adopted person. Here, the difficulty arises

because there has been no determination of parentage with regard to the putative father.

{¶ 30} Pursuant to statute and case law, a final decree of adoption brings finality to the process. R.C. 3107.15(A); *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 145, 684 N.E.2d 1228. And R.C. 3107.09(D) provides that, even after adoption, "[a] biological parent, or another person who provided information in the preparation of the social and medical histories of the biological parents of a minor, may cause the histories to be corrected or expanded to include different or additional types of information." Moreover, R.C. 3107.091 states that "a biological parent whose offspring, as a minor, was adopted and with respect to whom a medical and social history was not prepared prior or subsequent to the adoption" may provide a medical and social history for addition to the adoption records.

{¶ 31} It appears, however, that neither R.C. 3107.09 nor R.C. 3107.091 applies here because while a *biological* parent may provide a medical and social history or cause such histories to be supplemented or expanded after the entry of an adoption decree, the putative father in this case has not been determined to be the biological parent of the child adopted by the Furnases. Moreover, there is no evidence that the putative father is "another person who provided information in the preparation of the social and medical histories" before the adoption. R.C. 3107.09(D). Furthermore, these statutes do not provide any opportunity for a putative father to initiate, or for a juvenile court to conduct, parentage proceedings subsequent to the entry of an adoption decree by a probate court.

{¶ 32} In my view, the juvenile court is acting outside the scope of R.C. 3107.09 and 3107.091, and it has no other jurisdictional basis to determine the child's parentage. Therefore, R.C. 3107.15(A) controls, and the adoption decree issued by the probate court divests the juvenile court of jurisdiction to conduct proceedings in the parentage action.

{¶ 33} For these reasons, I respectfully dissent and would grant the writ of prohibition to prevent the juvenile court from proceeding in the parentage action.

LANZINGER, J., concurs in the foregoing opinion.

———————

**LANZINGER, J., dissenting.**

{¶ 34} I would grant this writ of prohibition to prevent Judge Monnin from proceeding with the juvenile court case and to direct him to dismiss the case and to vacate all orders entered in the case. R.C. 3107.15(A)(1) patently and unambiguously divests the court and judge of jurisdiction to proceed on a parentage action following the adoption decree terminating the biological father's

parental rights. Allowing a paternity action to proceed postadoption for a potential biological father to exercise nonexistent statutory "rights" is illogical and harmful to the finality of adoptions.

{¶ 35} We have already stated that "R.C. 3107.15(A) provides that a final decree of adoption issued by an Ohio court has the effect of terminating *all* parental rights of biological parents and creating parental rights in adoptive parents." (Emphasis added.) *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 145, 684 N.E.2d 1228.

{¶ 36} In *Kaylor,* we reversed a judgment of a court of appeals and granted a writ of prohibition to prevent a judge and court from proceeding on a motion for visitation filed by a biological parent whose rights had been terminated by a final decree of adoption. We held that notwithstanding the court and judge's basic statutory jurisdiction to grant visitation in a domestic-relations proceeding, "R.C. 3107.15(A)(1) patently and unambiguously divested them of jurisdiction to proceed on the biological mother's motions relating to visitation following the adoption decree terminating the natural mother's parental rights." Id. at 146, 684 N.E.2d 1228.

{¶ 37} The majority fails to apply *Kaylor,* apparently distinguishing visitation from the establishment of parentage. But the clear meaning of R.C. 3107.15 is that a final decree of adoption terminates the parental rights of any and all "biological and other legal parents" regardless of whether paternity has been established. Any other interpretation would leave all adoptions subject to attack by any putative father who fails to register pursuant to R.C. 3107.062 but later decides to make an attempt to set aside the adoption. The ultimate goals of the adoption statutes are to protect the best interest of children and ensure that the adoption process is completed expeditiously. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070.

{¶ 38} The statute that is cited by the majority as providing a "right" for a biological parent to update medical information, R.C. 3107.09(D), never uses that word. At most, it provides an opportunity for social and medical histories to be corrected even postadoption. Even Judge Monnin does not argue that a biological parent has this "right." In fact, his argument is that "[h]aving paternity established for the minor child is in the best interests of the minor child." But in stating that he is merely trying to establish who the biological father is, Judge Monnin ignores the very point of adoption. As of February 11, 2008, the law declares unequivocally that the father of this child is Kevin Jay Furnas. Paternity has already been established legally through the adoption, and the juvenile court's jurisdiction has terminated by statute. Upon a final decree, the adopted child becomes a "stranger to the adopted [child's] former relatives for all purposes." R.C. 3107.15(A)(1). All former parental rights are terminated. Id.

{¶ 39} The majority acknowledges that "Judge Monnin and the juvenile court have basic statutory jurisdiction over paternity actions instituted *by a putative father*. See R.C. 2151.23(B) ('the juvenile court has original jurisdiction under the Revised Code * * * [t]o determine the paternity of any child *alleged to have been born out of wedlock* pursuant to sections 3111.01 to 3111.18 of the Revised Code'); R.C. 3111.06 ('an action authorized under sections 3111.01 to 3111.18 of the Revised Code may be brought in the juvenile court'); R.C. 3111.04(A) ('An action *to determine the existence or nonexistence of the father and child relationship* may be brought by * * * a man alleged or alleging himself to be the child's father')." (Emphasis added.) Majority opinion at ¶ 14. But statutes allowing for parentage actions also refer to adoption as a means of establishing parental rights. The "parent and child relationship" includes "the legal relationship that exists between a child and the child's natural *or adoptive parents* and upon which those sections and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations." (Emphasis added.) R.C. 3111.01(A). "The parent and child relationship between a child and the adoptive parent of the child may be established by proof of adoption* * *." R.C. 3111.02.

{¶ 40} Incredibly, the majority states that "R.C. 3107.15(A)(1) does not purport to terminate a man's right to establish that he is the biological father of a child who has been adopted." Majority opinion at ¶ 17. Yet what else can the statute mean when it says that a final decree of adoption "relieve[s] the biological or other legal parents of the adopted person of *all* parental rights and responsibilities." (Emphasis added.)

{¶ 41} Because Frederick failed to register on the Putative Father Registry, his consent was not required for the adoption. The probate court had exclusive jurisdiction and finalized the adoption. The decree was never appealed. As a result, the Clark County Juvenile Court had no statutory jurisdiction to continue to determine paternity. At that point, the child cannot be "alleged to have been born out of wedlock" pursuant to R.C. 2151.23(B), giving the juvenile court jurisdiction over a parentage action. Parentage has been established through adoption. I respectfully dissent and would hold that R.C. 3107.15(A)(1) patently and unambiguously divests a court and judge of jurisdiction to proceed on a parentage action following an adoption decree terminating the biological father's parental rights.

O'DONNELL, J., concurs in the foregoing opinion.

———————

Voorhees & Levy, L.L.C., and Michael R. Voorhees, for relators.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Lisa M. Fannin, Assistant Prosecuting Attorney, for respondent.